UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OVE WILLIAM AKERBLOM, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | Civil Action No. 4:11-cv-00694 |
| VS. | § | |
| | § | |
| EZRA HOLDINGS LTD, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Before the Court are three Motions: Defendant Emas Subsea Services, LLC's Motion to Dismiss for Failure to State a Claim ("Emas Subsea's Motion") (Doc. No. 5); Defendants Ezra Holdings Limited, Ezra Energy Services PTE Ltd., and Emas Offshore Limited's Motion to Dismiss for Lack of Personal Jurisdiction and, Alternatively, on the Basis of Forum Non Conveniens ("EHL's Motion") (Doc. No. 3), and Defendant Lee Chye Tek Lionel a/k/a Lionel Lee's Motion to Dismiss on the Basis of Forum Non Conveniens ("Lee's Motion") (Doc. No. 4). After considering the Motions, all responses and replies thereto, the supplemental briefing, and the applicable law, the Court concludes that Emas Subsea's Motion and EHL's Motion must be **GRANTED.** The Court orders additional briefing and affidavits on Lee's Motion, to be submitted by February 10th, 2012, addressing the adequacy of the Singaporean forum.

### I. BACKGROUND[1]

---

[1] All facts are taken from Plaintiff's First Amended Complaint. (Doc. No. 11.)

In 2009, the offshore support and marine services company Ezra Holdings Limited ("EHL") approached Ove William Akerblom ("Akerblom" or "Plaintiff") with an oral offer to purchase Intrepid Global Pte. Ltd. ("IGPL"), a company in which Akerblom had a majority ownership. For several months, the managing director of EHL, Lee Chye Tek Lionel ("Lee"), and Akerblom discussed Akerblom's potential acquisition of IGPL. Akerblom was presented with a written offer to purchase IGPL in September 2009. He rejected that offer, however, due to concerns with the transfer of EHL stock, his employment agreement, and the infusion of cash into IGPL.

Lee then approached Akerblom a second time, and made various representations about the potential purchase. For example, among other promises, Lee suggested that EHL would transfer 1,500,000 shares of EHL to Akerblom, which would vest over a four year period; Akerblom would be provided with a five year employment contract with EHL and the Emas Subsea division of Emas Offshore Limited ("EOL"); Akerblom would retain a ten percent ownership of IGPL; and the Emas Subsea division of EOL would be integrated with IGPL. In October 2009, Akerblom entered into both an agreement to transfer ninety percent of the outstanding shares of IGPL to EHL, and a service agreement under which Akerblom was to be appointed managing director IGPL and receive monthly payments of $35,000. According to Akerblom, he would not have entered into these agreements but for Lee's specific representations on behalf of EHL. Akerblom was told that Greg McCavanagh ("McCavanagh"), an associate director of Emas Subsea Services, LLC ("Emas Subsea"), would report directly to him. Akerblom also claims that during a Business Process Operations Review meeting held with EHL,

Emas Subsea created an organizational chart that confirmed that Akerblom "was in charge of Emas Subsea Globally" and "in charge of operations in West Africa."

From October 2009 to June 2010, Akerblom and IGPL employees provided significant support to EHL's various programs. Additionally, Akerblom presented Lee with various opportunities for IGPL, which Lee declined to take, resulting in a minimum loss of $400 million in revenue to IGPL. According to Akerblom, IGPL offered to assist EHL and Emas Marine Services ("EMS") in Nigeria, as IGPL had extensive operational experience in that country. In response, EHL and EMS took employees from IGPL and placed them in the service of EMS, resulting in significant losses to IGPL, both financially and to its reputation. Akerblom also took steps, in early 2010, to develop business relationships in Ghana, one of the new frontiers in the oil and gas business. Nonetheless, Lee unilaterally determined that IGPL would not do business in Ghana, resulting in an astronomical loss of revenue to IGPL and Akerblom.

Akerblom believes that in March 2010, it became clear that EHL was attempting to "push Akerblom and IGPL out of their system." At this time, EHL established Emas Subsea Pte. Ltd. ("Emas Subsea Ltd.") and began shifting business from IGPL to Emas Subsea Ltd. At a meeting in May 2010, Lee at first indicated that Akerblom "would be in charge of the overall marine construction business," only to decide, on the second day of the meeting, that Akerblom would be in charge of operations only. When Akerblom refused to accept this change in his duties, Lee expressed dissatisfaction with Akerblom and falsely accused him of not delivering projects.

Over the next several months, various meetings were held in Houston, Texas concerning the potential of Akerblom to repurchase the shares of IGPL held by EHL. Lee

presented Akerblom with an offer to buy back IGPL by returning the 1,500,000 shares of EHL stock to EHL and payment of $650,000 to EHL. Lee told him "his choice was to accept this deal or that Lee would see to it that Akerbom was ruined economically and forced into personal bankruptcy." Indeed, Lee soon thereafter notified Akerblom that IGPL was no longer a pat of EHL, resulting in the effective termination of the service agreement between Akerblom and IGPL. Akerblom also believes that Lee started a crusade to ruin another company in which Akerblom held an interest, Intrepid Offshore Contractors ("IOC"), by instructing EHL personnel to force one of the owners of IOC to terminate a team of eleven people, including Akerblom. Akerblom claims that EHL and Lee also induced another EHL entity, Ezra Marine Services Pte. ("Ezra Marine"), to cancel and default on an existing contract with IOC. In November 2010, the Secretary and General Counsel of EHL notified Akerblom that he was to return the 1,500,000 shares of EHL and repay EHL $650,000, or EHL would pursue "other approaches to bring about a resolution of this matter."

Akerblom brought this lawsuit against EHL, Ezra Energy Services Pte. Ltd. ("Ezra Energy"), Emas Offshore Limited ("Emas Offshore"), Emas Subsea, and Lee (collectively, "Defendants") in state court, alleging breach of contract, common law fraud, statutory fraud, breach of fiduciary duty, intentional infliction of emotional distress, intentional interference with an existing contract, and civil conspiracy. The case was removed to this Court pursuant to 28 U.S.C. §§ 1332(a)(2), 1441, and 1446. Defendants then filed several Motions to Dismiss: Emas Subsea Services, LLC's Motion to Dismiss for Failure to State a Claim; Ezra Holdings Limited, Ezra Energy Services Pte. Ltd., and Emas Offshore Limited's Motion to Dismiss for Lack of Personal Jurisdiction

and, Alternatively, on the Basis of Forum Non Conveniens; and Lee Chye Tek Lionel's Motion to Dismiss on the Basis of Forum Non Conveniens.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), a defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6); *see also Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, No. 05–30976, 2006 WL 2870972, at *2 (5th Cir. Oct. 9, 2006) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1203 (3d ed. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability

requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S.Ct. at 1950. The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

### B. Personal Jurisdiction

"Absent a rule or statute to the contrary, . . . a federal court [may] exercise jurisdiction over only those defendants who are subject to the jurisdiction of courts of the state in which the court sits." *Point Landing, Inc. v. Omni Capital International, Ltd.*, 795 F.2d 415, 419 (5th Cir. 1986), *aff'd sub nom. Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Because the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–17.045, is coterminous with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Court's constitutional due process inquiry into personal jurisdiction also

6

serves as an inquiry into personal jurisdiction under the Texas long-arm statute. *Command–Aire Corp. v. Ontario Mechanical Sales and Service Inc*., 963 F.2d 90, 93-4 (5th Cir. 1992).

To comport with constitutional due process, a plaintiff must show that: (1) defendants purposefully availed themselves of the benefits and protections of Texas law, thereby establishing "minimum contacts" with Texas such that defendants could reasonably have anticipated being haled into court there; and (2) under the circumstances, the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 94 (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); and *Asarco, Inc. v. Glenara, Ltd*., 912 F.2d 784 (5th Cir. 1990)). See also *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) ("When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."). The minimum contacts requirement can be met through contacts sufficient to confer either specific or general jurisdiction. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citation omitted).

Specific jurisdiction exists "[w]hen a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (citation omitted). "The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state." *Clemens v. McNamee*, 615 F.3d 374,

378 (5th Cir. 2010) (citing *Burger King*, 471 U.S. at 474). See also *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010) ("The 'purposeful availment' element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or the unilateral activity of another person or third party."). Further, specific jurisdiction "requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action." *Clemens*, 615 F.3d at 378-79. Indeed, the non-resident defendant must purposefully avail herself of the privilege of conducting activities in the forum state. *Id.* at 379. For example, in the case of a company, relevant factors in finding specific jurisdiction would be a "regular … flow" or "regular course" of sales, or "something more," such as "special state-related design, advertising, advice, marketing," or a "specific effort" to sell in the state. *McIntyre Machinery, Ltd. v. Nicastro*, —— U.S. ——, ——, 131 S.Ct. 2780, 2792, 180 L.Ed.2d 765 (2011) (Breyer, J., concurring) (quotations omitted).

Unlike specific jurisdiction, general jurisdiction can be exercised when a defendant's contacts with the forum state are substantial, continuous, and systematic, though unrelated to the litigation. *Cent. Freight Lines, Inc.*, 322 F.3d at 381. To determine general jurisdiction, a court views all of the defendant's contacts "over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

While the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists, a *prima facie* showing suffices, and the plaintiffs need not establish jurisdiction by a preponderance of the evidence. *Love N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Moreover, "the Court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *Id.* (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). "'The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

### C. Forum Non Conveniens

The equitable doctrine of forum non conveniens enables a district court, at its discretion, to decline to exercise jurisdiction "if the moving party establishes that the convenience of the parties and the court and the interests of justice indicate that the case should be tried in another forum." *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001). When deciding a forum non conveniens issue, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). A district court should first consider whether an available and adequate alternative forum exists. *Karim*, 265 F.3d at 268 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). A district court generally considers the following factors: "(1) amenability of the defendant to service of process and (2) availability of an adequate remedy in the alternative forum." *Id.*; *see also*

*Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379-80 (5th Cir. 2002), *cert. denied*, 538 U.S. 1012, 123 S.Ct. 1928, 155 L.Ed.2d 848 (2003); *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001). If an available and adequate alternative forum exists, the court then determines which forum is best suited to the litigation. *Id.*

Second, a court must consider which private and public interest factors weigh in favor of dismissal. *Id.* 268-69. The private interest factors to be considered by the Court relate primarily to the convenience of the litigants. They are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986) (citing *Piper Aircraft*, 454 U.S. at 241). The public interest factors relevant to the analysis are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Saqui v. Pride Cent. America, LLC*, 595 F.3d 206, 214 (5th Cir. 2010) (citing *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1162-63 (5th Cir. 1987) (en banc)).

### III. ANALYSIS

#### A. Emas Subsea Services, LLC's Motion to Dismiss for Failure to State a Claim

Emas Subsea insists that the claims against it should be dismissed. Specifically, Emas Subsea contends, Akerblom "does not even mention Emas Subsea after the

recitation of parties and jurisdiction." (Doc. No. 5, Emas Subsea's Mot. 2.) Emas Subsea explains that this is because "Emas Subsea could not possibly have owed [Akerblom] any of the purported legal duties that [Akerblom] alleges with regard to the other named defendants," as Emas Subsea "did not contract with [Akerblom], serve as an officer or director of any relevant entities, or make any representations to [Akerblom]." (*Id.* 2-3.) Emas Subsea is correct that Akerblom does not offer any facts regarding Emas Subsea that could give rise to claims against it. (Am. Compl. ¶¶ 18-38.) Akerblom insists that his Amended Complaint does state a claim against Emas Subsea, however, because it avers that: "LEE is either the Managing Director each entity *[sic]* or division or is in control of it and the group. It is often impossible to determine which entity he is acting for, as he is acting on behalf of EHL and EMAS in all of his actions. Additional *[sic]* EESP, EOL, EESL *[sic]*, and IGPL are the alter-ego of EHL." (*Id.* ¶ 38.) Akerblom insists that these statements "clearly permit[] a reasonable inference that all acts by Lee were on behalf of Emas Subsea, as well as on behalf of the other Defendants." (Doc. No. 18, Resp. to Emas Subsea's Mot. 3.)

The Court concludes that the Amended Complaint does not include sufficient facts to state a claim that "Emas Subsea, through Lee and in concert with the other Defendants, conspired to breach the contracts in question, committed fraud, breached fiduciary duties and is liable to him under theories of joint enterprise liability, alter-ego and civil conspiracy." (*Id.*) To so find, the Court would have to "'strain to find inferences favorable to'" Akerblom, and "accept 'conclusory allegations, [and] unwarranted deductions.'" *R2 Investments LDC*, 401 F.3d at 642 (quoting *Southland Sec. Corp.*, 365 F.3d at 361). First, Akerblom does not even state that Lee was acting on behalf of Emas

Subsea in particular; rather, he alleges that Lee was acting on behalf of EHL and EMAS. Second, even if Akerblom claimed, in his Amended Complaint, that Lee was acting on behalf of Emas Subsea, he provides no factual support for such a conclusory assertion. Third, Akerblom's legal conclusion that Emas Subsea is the alter-ego of EHL is not entitled to the same weight as his factual assertions. As a result, the Court concludes that Akerblom has failed to state a claim against Emas Subsea.

Akerblom has also requested leave to amend his Amended Complaint. (Resp. to Emas Subsea's Mot. 4.) "In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 330 (5th Cir. 2002). Although a court should freely give leave to amend, Fed. R. Civ. P. 15(a), "'[a] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile,'" *Ayers v. Johnson*, 247 Fed.Appx. 534, 535 (5th Cir. 2007) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999)). Other factors counseling against leave to amend are "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Barnes v. Madison*, 79 Fed.Appx. 691, 698 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 179, 182 (1962)).

The Court concludes that it will not grant leave to amend in this case, as it believes amendment will be futile. Indeed, Akerblom filed his Amended Complaint after Emas Subsea filed its Motion to Dismiss. Therefore, Akerblom already had an opportunity to cure the deficiencies Emas Subsea observed in its Motion. As a consequence, the Court grants Emas Subsea's Motion to Dismiss.

### B. Ezra Holdings Limited, Ezra Energy Services Pte. Ltd., and Emas Offshore Limited's Motion to Dismiss for Lack of Personal Jurisdiction and, Alternatively, on the Basis of Forum Non Conveniens

EHL, Ezra Energy, and Emas Offshore claim that this Court cannot exercise personal jurisdiction over them. Alternatively, they move to dismiss on the basis of forum non conveniens. As the Court agrees that it does not have personal jurisdiction over EHL, Ezra Energy, and Emas Offshore, it will not reach the forum non conveniens question.

### 1.   Parties' Allegations

EHL, Ezra Energy, and Emas Offshore attest that this case involves a commercial dispute brought by an individual Texas resident against several Singaporean companies pursuant to contracts negotiated, executed, and to be performed in Singapore. (Doc. No. 3, EHL's Mot. 1-2.) Akerblom was living in Singapore at the time he negotiated the contracts, they explain, and the contracts each contain Singaporean forum selection and choice-of-law clauses. (*Id.*) The contacts between Texas and this dispute, they claim, are tenuous at best. (*Id.*) These parties state that: They maintain their corporate offices and principal place of business in Singapore; have their management and board of directors' meetings in Singapore; maintain ongoing jurisdictional contacts with Singapore only; do not engage in any substantial, continuous, or systematic business in Texas; have not contracted with Texas residents for business to be performed in Texas; do not recruit

Texas residents for employment; are not registered to do business in Texas; do not pay taxes or own real property in Texas; and do not perform services or sell goods in Texas or in the territorial waters of Texas. (*Id.* 2-3.) According to EHL, Ezra Energy, and Emas Offshore, Akerblom's jurisdictional allegations amount to vague assertions that Defendants have continuous and systematic contacts with Texas, and four meetings in Houston that, by Akerblom's own admission, occurred after the contracts at issue were negotiated. (*Id.* 3.) Indeed, they explain, three of these meetings occurred after the dispute had arisen between the parties and while the parties were attempting to negotiate a settlement. (*Id.*)

In his Response, Akerblom argues that "Ezra/Emas" does business in the United States from an office based in Houston, Texas. (Doc. No. 19, Resp. to EHL's Mot. 7.) Furthermore, according to Akerblom, "[w]hile Ezra/Emas claims to be merely a holding company that does not directly engage in business, it, in fact, controls the day-to-day activities of its operating divisions." (*Id.*) Akerblom also explains that Lee, the Managing Director and an employee of EHL, has been in Houston since June 2010, more than a year prior to filing of the lawsuit. (*Id.* 15.) EHL even appointed Akerblom as Managing Director of its "subsea division," Akerblom points out, with specific directions to use Houston as the key client interface. (*Id.*) Indeed, EHL allegedly announced that McCavanagh would oversee the Houston office and its involvement in the subsea sector. (*Id.*) One of the contracts at issue, Akerblom claims, involved a Texas resident, James Ronald Dobbs ("Dobbs"). (*Id.* 16.) Akerblom believes that Ezra/Emas has even advertised since 2009 that it has a headquarters in Houston for its Americas Subsea and Well Intervention activities. (*Id.*) Akerblom further contends that Ezra Holdings

scheduled its 2010 mid-year "BPOR" meeting in Houston, and Lee hosted a social gathering of attendees at his home, which included many managers. (*Id.*) According to Akerblom, Ezra/Emas advertises on its website that it has an office in Houston, and even acquired the assets of a Texas-based company. (*Id.*) EHL also allegedly purchased a 650,000 square foot fabrication facility in Houston, Texas on November 16, 2010 ("fabrication facility"). (*Id.*) These activities, Akerblom argues, are sufficient to uphold general jurisdiction.

Furthermore, Akerblom avers, there is ample evidence "that all of the Ezra/Emas entities are so closely controlled by Ezra Holdings that they had the requisite contacts needed to sustain jurisdiction." (*Id.* 18.) Specifically, Akerblom contends: "Ezra/Emas markets itself worldwide under one single Emas brand. It operates through four (4) distinct divisions, one of which is Emas AMC, the division which operates in Texas. All of these divisions are under the control of Lee, the Managing Director of Ezra Holdings. The 'subsidiaries' are not independent operations, as evidenced by its operational control over Intrepid. Though Ezra/Emas attempts to distance itself from its subsidiaries in the affidavit proof provided, the reality is that they are all treated and controlled as a part of one company—Ezra Holdings." (*Id.*) Akerblom also insists that Emas Subsea acts as an agent of EHL, as "[b]ased upon the facts in this case, Ezra/Emas would clearly perform the services of Emas Subsea if that entity did not do so." (*Id.* 19.) Finally, Akerblom contends that there is personal jurisdiction over EHL, Ezra Energy, and Emas Offshore because Lee, "the person in charge of such businesses," was served with process. (*Id.*)

EHL, Ezra Energy, and Emas Offshore dispute Akerblom's allegations. They claim that "Ezra/Emas" does not exist; rather, Emas is merely a brand name covering

Defendants' products and services. (Doc. No. 22, Reply to EHL's Mot. 2.) They also emphasize that they are (1) not registered to do business in Texas; (2) do not pay taxes in Texas; (3) do not have offices in Texas; (4) do not perform any services, sell any goods, or do any work in Texas; (5) do not recruit employees in Texas; (6) do not own property in Texas; (7) do not have bank accounts in Texas; and (8) do not have a phone number in Texas. (*Id.*) EHL, Ezra Energy, and Emas Offshore explain that they are all headquartered in Singapore, where their business records are stored and their respective boards of directors meet. (*Id.*)

EHL, Ezra Energy, and Emas Offshore admit that a separate entity, which is not a party to their Motion, has Texas contacts, namely, Emas Subsea. (*Id.* 2-3.) However, Emas Subsea is a separate and independent affiliate, they explain, and therefore "Plaintiff's reliance on Subsea's operations in Texas are *[sic]* misplaced and irrelevant." (*Id.* 3.) Ezra Holdings, Ezra Energy, and Emas Offshore further describe how the fabrication facility was purchased by EZRAM LLC, a separate entity that is not involved in the lawsuit. (*Id.*) Furthermore, they contend, Ezra Holdings only indirectly acquired the stock of a U.S.-based company, and does not have any assets in the U.S. (*Id.*) The transactions surrounding those assets took place in Singapore and Norway and all funds were paid from a Singaporean account to a Norwegian account. (*Id.* 3-4.) They also explain that the transaction was not completed until March 2011, after this lawsuit was filed. (*Id.* 4.) EHL, Ezra Energy, and Emas Offshore further insist that Emas Subsea is not the alter ego of, or a single business enterprise with, any of the Defendants. (*Id.* 5-8.) Finally, they contend that service on their corporate representative is not sufficient to confer personal jurisdiction. (*Id.* 8-10.)

16

## 2.  Analysis

The Court concludes that Akerblom has not made a *prima facie* showing that this court has personal jurisdiction over EHL, Ezra Energy, and Emas Offshore. Akerblom alleges that the Court has general jurisdiction over these entities, as the claims in this case did not arise from the contacts between EHL, Ezra Energy, and Emas Offshore, and Texas. (Resp. to EHL's Mot. 14.) Yet, as outlined in the declaration of David Tan Yew Beng[2], EHL, Ezra Energy, and Emas Offshore have never: Contracted with a Texas resident for the performance of a contract in the State of Texas; recruited Texas residents for employment; had a place of business, principal or otherwise, located anywhere in Texas; been registered to do business in Texas; been required by law to be registered in Texas; paid taxes in Texas or been required by law to pay taxes in Texas; had an office in Texas; recruited employees in Texas; owned real property in Texas; had a phone number in Texas; performed services, sold goods, or done any other work in Texas or the territorial waters of Texas; or had bank accounts in Texas. (Doc. No. 3-1, David Tan Yew Beng Decl. ¶¶ 4-22.) Akerblom presents allegations about an entity, "Ezra/Emas," that does not exist. (Doc. No. 22-1, Tay Chin Kwang Decl. ¶¶ 4-6.) When assessing personal jurisdiction, this Court is not required "to credit conclusory allegations, even if uncontroverted." *Panda Brandywine v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). Akerblom's conclusory allegations concerning the activities of a non-existent entity are insufficient to make a *prima facie* showing of personal jurisdiction.

Akerblom's remaining allegations about EHL, Ezra Energy, and Emas Offshore's links to Texas either do not survive further scrutiny or are insufficient to give rise to general jurisdiction. Akerblom makes the following assertions:

---

[2] Beng is General Counsel and Secretary of EHL, and Secretary of Ezra Energy. (Beng Decl. ¶ 1.)

- "Ezra Holdings uses the names 'Ezra' and 'Emas' interchangeably." (Sup. Resp. to EHL's Mot. 3.) Rather, EHL refers to itself, together with its subsidiaries, as "Ezra" or the "Group," and notes that the Group operates globally under the EMAS branding. (Ex. B to Resp. to EHL's Mot., "Ezra Holdings Limited 2010 Annual Report" 6.) Although the Annual Report refers to "Ezra/Emas," this is not evidence that "Ezra/Emas" is an entity; rather, it is an umbrella term referring to EHL and its subsidiaries. (*Id.* 18.)

- "Ezra Holdings maintained an office in Houston, Texas prior to 2007." (Sup. Resp. to EHL's Mot. 4.) As evidence for the fact that EHL had a regional office in Houston, Texas, Akerblom cites to his affidavit, which does not mention an office in Houston prior to 2007. Therefore, this conclusory allegation does not support Akerblom's argument for personal jurisdiction.

- "Emas Holdings re-established its office in Houston, Texas in 2009." (*Id.*) "Emas Holdings" is not a party to this lawsuit; presumably, Akerblom means EHL. As support for this statement, Akerblom cites to a slideshow presentation by EMAS, which includes in one slide the statement, under the heading "Corporate Milestones": "2009: Established HQ in Houston for Americas Subsea and Well Intervention activities and Oslo Office." (Ex. I to Resp. to EHL's Mot., "EMAS Capabilities and Overview Presentation" 3.) A statement from an EMAS presentation does not indicate that the entities EHL, Ezra Energy, and Emas Offshore had links to Texas. Akerblom does state in his affidavit that "EHL began operations in Houston, Texas, and established Emas Subsea Services, LLC on

August 21, 2009." (Ex. A to Resp. to EHL's Mot., Akerblom Aff. ¶ 3.) This assertion is controverted by Defendants' affidavits, which assert that EHL, Ezra Energy, and Emas Offshore do not operate in or have a business presence in the U.S., and do not have a place of business located anywhere in Texas. (Kwang Decl. ¶ 10; Beng Decl. ¶ 6.) Nonetheless, this Court must resolve conflicts between the facts in the parties' affidavits in plaintiff's favor. *Network Multifamily Sec. Corp. v. Homes for America Holdings, Inc.*, No. 3:10–cv–01981–M, 2011 WL 2412966, at *2 (N.D. Tex. June 10, 2011); *Luv N' Care*, 438 F.3d at 469 ("This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction."). Yet Defendants have also submitted letter explaining that any office in the United States belonged to an entity, KSES; since 2007, EHL has not owned any interest in this entity, and has not otherwise had an office in the United States. (Ex. D to Sup. Reply to EHL's Mot., "Jan. 13, 2012 Letter from Philip G. Eisenberg.") Furthermore, beginning "operations" does not indicate that EHL, Ezra Energy, and Emas Offshore established an actual office in Texas, and "operations" alone—without more detail as to the extent and depth of those operations—would not give rise to general jurisdiction. *Cent. Freight Lines Inc.*, 322 F.3d at 381 (finding no general jurisdiction even though the defendant routinely arranged and received interline shipments to and from Texas and regularly sent sales people to Texas to develop business, negotiate contracts, and service national accounts).

- "Akerblom was hired, and his company was acquired, to assist with the expansion of Ezra Holdings Subsea Division and to specifically assist with its U.S. Gulf

Coast expansion." (Sup. Resp. to EHL's Mot. 4.) As support, Akerblom cites to an Ezra media release, which states: "Ezra's strategy to layer more value-added services across its sophisticated fleet is now further aligned with the addition of IGPL's Managing Director Mr. Ove William Akerblom and his team. The expertise of Mr. Akerblom's team in deepwater subsea installations will boost Ezra's capabilities and allow it to broaden its scope of subsea services for its existing customer base." (Ex. G to Resp. to EHL's Mot., "Nov. 3, 2009 Ezra Media Release" 1.) This statement, however, does not indicate that Akerblom and his team were working as an arm of EHL, Ezra Energy, or Emas Offshore, rather than for one of their subsidiaries. Akerblom also points to his affidavit, which states that he was "the Managing Director of the Emas Subsea business globally, which would focus in deepwater segments in four (4) specific geographical regions—Africa, the Gulf of Mexico, Brazil, and the Asia Pacific." (Akerblom Aff. ¶ 5.) These statements do not describe ties of EHL, Ezra Energy, or Emas Offshore, but rather of Emas Subsea.

- "While the Defendants attempt to insulate themselves by claiming that any reference to subsea refers only to its separate Texas-based subsidiary, it is clear that Ezra Holdings believes otherwise, as it notes that its subsea division operates throughout the world and includes a critical strategic location in Houston, Texas. It is also clear that Akerblom was establishing the 'Emas Americas Deepwater Subsea Division.'" (Sup. Resp. to EHL's Mot. 3-4.) Akerblom refers to a copy of a presentation by the Deepwater Subsea Services Division of EMAS as evidence that EHL seeks to establish Houston as a strategic location, and that Akerblom

was responsible for establishing the "Emas Americas Deepwater Subsea Division." (Ex. H to Resp. to EHL's Mot., "Deepwater Subsea Services Division Presentation" 5.) This evidence that Akerblom was involved in establishing "Emas Americas," however, does not support personal jurisdiction over the entities EHL, Ezra Energy, and Emas Offshore.

- "Ezra Holdings Subsea Division has three (3) regional headquarters in Singapore, Oslo, and Houston." (Sup. Resp. to EHL's Mot. 4.) Akerblom refers to a non-existent exhibit, "Exhibit R," as evidence to support this statement. Therefore, this is merely a conclusory assertion. An Ezra Holdings Limited 2010 Annual Report does mention that "the Group operates globally with offices in the UK, the US, Norway, India, Thailand, Malaysia, Vietnam, Australia, Brunei and Singapore." (Ex. B to Resp. to EHL's Mot., "Ezra Holdings Limited 2010 Annual Report" 6.) Yet "the Group" refers to EHL together with its subsidiaries; therefore even if the US-based office were in Houston, this would not necessitate the conclusion that EHL, Ezra Energy, and Emas Offshore, as opposed to their subsidiaries, had headquarters in Houston.

- "Lionel Lee is the director of Ezra Holdings, and is responsible for the overall management of Ezra Holdings and its subsidiaries." (Sup. Resp. to EHL's Mot. 5.) Akerblom mischaracterizes Lee's role, describing him as "the director of Ezra Holdings," whereas he is actually one of eight directors. (*Id.*; "Ezra Holdings Limited 2010 Annual Report" 21.) Lee is responsible for the overall management of the "Group." (*Id.*) Yet under the Fifth Circuit's standard, Lee's presence in Texas is alone insufficient to confer personal jurisdiction over the company.

*Johnston*, 523 F.3d at 612 (holding that there was no general jurisdiction over a Canadian company even though it employed two Texas residents and a former corporate director lived in Texas, as the director did not conduct board business in Texas).

- "Akerblom was appointed Managing Director of Emas Subsea." (Sup. Resp. to EHL's Mot. 5; Ex. F to Resp. to EHL's Mot., "The Connection: A Bi-Monthly Publication of the EMAS Group" 6.) Yet again, this fact does not provide evidence of a jurisdictional link between EHL, Ezra Energy, and Emas Offshore and Texas.

- "Emas Subsea has a branch office in Houston, Texas." (Sup. Resp. to EHL's Mot. 5.) The fact that Emas Subsea has a branch office in Houston, Texas, does not establish personal jurisdiction over EHL, Ezra Energy, and Emas Offshore.

- "Ezra Holdings held its mid-year Business Process Operations Review ('BPOR') meeting in Houston, Texas in May 2010, which was attended by eleven (11) employees, ten (10) of whom were Ezra Holdings employees." (*Id.*) As support for this statement, however, Akerblom merely cites to his affidavit, which only describes a "social gathering" at Lee's home in Sugar Land. (Akerblom Aff. ¶ 25.) The affidavit goes on to state that "[o]riginally, Ezra/Emas intended to have its semi-annual BPOR meeting in Houston during May 2011, but this was changed to a meeting of Group Managers focusing on Emas Subsea's business." (*Id.*) A single meeting about Emas Subsea's business does not support general jurisdiction over EHL, Ezra Energy, and Emas Offshore. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 2000) (finding that presence at three

meetings in Houston, together with correspondence and phone calls, was insufficient to establish general jurisdiction); *Wilson v. Belin*, 20 F.3d 644, 650 (5th Cir. 1994) (finding several trips to Texas, in addition to legal work for various Texas law firms, publishing a book circulated in Texas, and interviews with Texas reporters, to be insufficient to confer general jurisdiction).

- "In November 2010, Lionel Lee was quoted stating that Ezra Holdings bought the firm's first U.S. registered vessel for use in the Gulf of Mexico, some remotely operated vehicle assets, and 250,000 square foot facility in Houston, Texas for manufacturing marine cranes. He also stated that 'Quite quickly, we grew from five (5) people in Houston to about eighty (80) people.'" (Sup. Resp. to EHL's Mot. 5.) Although an article from the Houston Business Journal does support these alleged facts (Ex. Q to Resp. to EHL's Mot., "Ezra-Aker Marine Merger Goes Global in Houston" 1), a media release from Ezra Holdings clarifies that the fabrication facility was purchased through Ezra's newly formed subsidiaries, Ezram Properties LLC and Ezram Enterprise LLC (Ex. M to Resp. to EHL's Mot., "Media Release" 1). Furthermore, purchase of a vessel and "remotely operated vehicle assets" would not give rise to general jurisdiction. *Submersible Systems, Inc.*, 249 F.3d at 419 (finding that construction of a marine drilling rig and maintenance of an office at the shipyard with three employees to monitor construction did not rise to the level of continuous and systematic contacts giving rise to general jurisdiction). Finally, the statement "we grew from five (5) people in Houston to about eighty (80) people" is not evidence that there was an EHL, Ezra Energy, or Emas Offshore office in Texas; rather, Lee could have been

referring to the office of a subsidiary. Furthermore, as mentioned above, Defendants have submitted a letter explaining that EHL, Ezra Energy, and Emas Offshore do not have an office in the United States. (Jan. 13, 2012 Letter from Philip Eisenberg 1.)

- "The very contract at issue in this litigation included a Texas resident, James Dobbs, who sold stock in Intrepid Global Pte, Ltd. to Defendant, Ezra Energy Services Pte., Ltd." (Sup. Resp. to EHL's Mot. 6.) However, "[c]ontracting with a resident of the forum state does not alone support the exercise of jurisdiction over the defendant." *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 591 (5th Cir. 2003) (citing *Colwell Realty Inv., Inc. v. Triple T Inns of Ariz., Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986)). Therefore, this fact does not enhance Akerblom's argument for personal jurisdiction.

- "A procuring and expediting department of Ezra Holdings was set up in Houston, Texas to oversee equipment bought from North America and worked closely with the Singapore team to align procurement and expediting policies." (Sup. Resp. to EHL's Mot. 6.) As evidence, Akerblom cites to an email from Lee that reads: "Also underway is a procurement and expediting department to be set up in Houston. It will oversee equipment bought out from North America to be shipped to our yards in Ho Chi Minh City and Vung Tau. This new department will work closely with our Singapore team to align procurement and expediting policies." (Ex. D to Resp. to EHL's Mot., "June 11, 2010 Email from Lionel Lee" 1.) Yet there is no indication, in this paragraph, that Lee is discussing actions by EHL, Ezra Energy, or Emas Offshore in particular. Nor, the Court concludes, would

such a procurement and expediting department to oversee equipment be sufficient to establish personal jurisdiction. *Submersible Systems*, 249 F.3d at 419 (finding construction of a rig in Mississippi and maintenance of an office to monitor the rig insufficient to confer personal jurisdiction).

- "Ezra Holdings' Houston-based subsidiary, Emas Subsea Services LLC, was set up solely for tax purposes." (Sup. Resp. to EHL's Mot. 6.) As support, Akerblom cites to his affidavit, which states that Emas Subsea "was established in the United States for tax purposes." (Akerblom Aff. ¶ 3.) Akerblom's affidavit does not state that Emas Subsea was established *solely* for tax purposes; Akerblom does not provide further support for this conclusory assertion.

- "Lionel Lee and other Ezra Holdings personnel met with Akerblom in Houston, Texas on at least three (3) occasions (September 24, September 30 and October 13, 2010) to discuss Akerblom's role with Ezra/Emas." (Sup. Resp. to EHL's Mot. 6.) Akerblom does not provide any evidence supportive of this allegation. Furthermore, the meetings alone would not give rise to personal jurisdiction. *Maxor Nat. Pharmacy Services Corp. v. Gearreald*, No. 2:11–CV–045–J, 2011 WL 2989812, at *4 (N.D. Tex. July 22, 2011) (finding that meeting in Texas to negotiate salary and execute employment contract did not give rise to continuous and systematic contacts sufficient to support general jurisdiction); *Johnston*, 523 F.3d at 614 ("[M]ere travel, even at regular intervals into a state, does not create general jurisdiction."); *Central Freight Lines, Inc.*, 322 F.3d at 381 (finding no general jurisdiction even though company routinely arranged and received

interline shipments to and from Texas and sent sales people to the state on a regular basis to develop business).

- "The only real property owned by Ezra Holdings is in Houston, Texas." (Sup. Resp. to EHL's Mot. 6.) As support, Akerblom points to a non-existent exhibit, "Exhibit R." Furthermore, this statement contradicts Beng's declaration, which states that Ezra Holdings "does not own real property in Texas." (Beng Decl. ¶8(f).)

- "On October 22, 2010, Ezra Holdings announced its proposed acquisition of Aker Maritime Contractors in Houston, Texas." (Resp. to EHL's Mot. 11.) As support, Akerblom cites to a media release that does not mention that the acquisition is connected to Texas or even the United States. (Ex. L to Resp. to EHL's Mot., "Media Release: Ezra Propels Into Top Ranks of the Subsea Sector with US$250m Transformational Acquisition of Aker Marine Contractors" 1.) Tay Chin Kwang[3] explains that as part of a transaction between EHL and a Norwegian company (Aker Solutions AS and Aker Oilfield Services AS), EHL indirectly acquired the stock of a US-based company. (Kwang Decl. ¶ 7.) Specifically, the company Aker Marine Contractors, owned by EHL, owns all of the stock of Aker Marine Contractors US, Inc. (*Id.*) Kwang emphasizes: "[T]he U.S. entity continues to operate independently under the Aker name and is not a party to this lawsuit. Nor is that entity alleged to have any involvement in the facts at issue in this lawsuit. It must be emphasized that Ezra Holdings did not acquire any assets in the US." (*Id.*) This attenuated link to Texas is not enough to give rise to

---

[3] Kwang is Finance Director of EHL.

personal jurisdiction. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1069 n.12 (5th Cir. 1992) ("[W]e do not believe that mere stock ownership in Texas businesses reflects an activity purposefully directed toward Texas." (quotation and punctuation omitted)).

The contacts between EHL, Ezra Energy, and Emas Offshore and Texas are simply not substantial, continuous, and systematic. The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston*, 523 F.3d at 609. *See also Alliantgroup, L.P. v. Feingold*, No. H-09-0479, 2009 WL 2498551, at *4 (S.D. Tex. Aug. 12, 2009) ("The case law sets a high bar for contacts sufficient for general personal jurisdiction."). This is not a case where the corporation's records were kept in Texas, board of directors' meetings were held in Texas, accounts were held in Texas banks, and all key business decisions were made in Texas. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-48 (1952) (finding general jurisdiction over a Philippine corporation that temporarily relocated to Ohio when the corporation's president resided in Ohio, corporation's records were kept in Ohio, board of directors' meetings were held in Ohio, accounts were held in Ohio banks, and all key business decisions were made in Ohio). The record suggests that the links between EHL, Ezra Energy, and Emas Offshore and Texas are minimal, and certainly do not meet the high bar required to justify this Court's exercising general jurisdiction over them.

Akerblom also contends, however, that this Court should have personal jurisdiction because of the links of Ezra Holdings, Ezra Energy, and Emas Offshore's subsidiaries to Texas. Yet "the fact that [a defendant] has affiliates or subsidiaries in

Texas is not enough to show minimum contacts." *Larsen v. Crème de la Crème Inc.*, No. 4:09-CV-613, 2011 WL 255544, at *3 (E.D. Tex. Jan. 26, 2011) (citing *Gartin v. Par Pharm. Co., Inc.*, 561 F.Supp.2d 670, 677 (E.D. Tex. 2007)). "As a general rule … the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Freudensprung v. Offshore Tech. Servs., Inc.,* 379 F.3d 327, 346 (5th Cir. 2004) (citations omitted). This "presumption of institutional independence of related corporate entities may be rebutted by clear evidence, which requires a showing of something beyond the mere existence of a corporate relationship between a resident and nonresident entity to warrant the exercise of jurisdiction over the nonresident." *Id.* (quotations and citation omitted). In other words, jurisdictional veil piercing is limited to situations where a parent corporation "exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for the purposes of jurisdiction." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) (citations and internal quotations omitted).

Akerblom alleges that "[w]hile Ezra Holdings claims to operate through its sixty-two (62) subsidiaries, these subsidiaries are merely divisions of the overall operation" and do not have "separate identities." (Resp. to EHL's Mot. 12.) Indeed, Akerblom insists, "[t]hey are merely organized as separate companies for financial and tax purposes." (*Id.*) Yet Akerblom has provided no evidence of something more than the mere existence of a corporate relationship between EHL and its subsidiaries. Although Akerblom points to a series of email exchanges "as proof that the 'subsidiaries' of Ezra

Holdings do not operate independently of one another," those emails do not demonstrate domination and control over the subsidiaries such that the entities are one and the same corporation. (Sup. Resp. to EHL's Mot. 8; Ex. P to Response to EHL's Mot., "Akerblom Email Exchanges" 1-2.) Nor does this statement, allegedly made by EHL, help Akerblom meet the standard: "A subsidiary is an entity, in which the Group has the power to govern the financial and operating policies so as to obtain benefits from its activities." (Sup. Resp. to EHL's Mot. 9.) In other words, this statement does not show that EHL exerts such domination and control that its subsidiaries are not separate and distinct corporate entities. Akerblom does state in his affidavit that "EHL and Emas control all of the day-to-day activities of the various subsidiaries, including payroll, human resources, and overall decision making." (Akerblom Aff. ¶ 2.) Yet this statement alone does not constitute "clear evidence" of something more than a mere corporate relationship between EHL and its subsidiaries. The Court concludes that it does not have personal jurisdiction over EHL, Ezra Energy, or Emas Offshore based upon the contacts of their subsidiaries.

Akerblom also seeks for this Court to exercise general jurisdiction over EHL, Ezra Energy, and Emas Offshore based on an agency theory. "'Under Texas law, [a]gency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control.'" *Sunshine Kids Foundation v. Sunshine Kids Juvenile Products, Inc.*, No. H-09-2496, 2009 WL 5170215, at *14 (S.D. Tex. Dec. 18, 2009) (quoting *Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 535 F.3d 359, 364 (5th Cir. 2008)). "'To prove agency, evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the

means and details of the process by which the agent will accomplish that task.'" *Id.* (quoting *Indian Harbor Ins. Co.*, 535 F.3d at 364). "'It is the principal's extent of control over the details of accomplishing the assigned task that primarily distinguishes the status of independent contractor from that of agent.'" *Id.* (quoting *Indian Harbor Ins. Co.*, 535 F.3d at 364). Akerblom has not provided evidence that Emas Subsea has worked as an agent for EHL, Ezra Energy, and Emas Offshore. In other words, there is no evidence that EHL, Ezra Energy, or Emas Offshore controlled the means and details of Emas Subsea's work. *Id.* ("[T]he plaintiff in this action has failed to meet its *prima facie* burden of establishing the existence of the minimum contacts needed to support the exercise of personal jurisdiction because the plaintiff has failed to cite and/or proffer facts from which the court could infer that any of the SKJP entities either assigns tasks to another SKJP entity, or controls the means and details of the process by which another SKJP entity accomplishes its tasks."). Therefore, Akerblom's agency theory fails.

Finally, service on the corporate representative is insufficient to confer personal jurisdiction. *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) ("To assert, as plaintiffs do, that mere service on a corporate agent automatically confers *general jurisdiction* displays a fundamental misconception of corporate jurisdictional principles."). Therefore, this Court does not have personal jurisdiction based upon service on Lee.

### 3.   Request for Additional Discovery

The Court denies Akerblom's request to conduct additional discovery. (Sup. Resp. to EHL's Mot. 9.) The Court already granted Akerblom the opportunity to file additional briefing explaining whether EHL has a Houston-based office; instead of

submitting additional evidence, Akerblom's briefing simply repeats his prior arguments. The Court has before it over seventeen exhibits from Akerblom and three affidavits; such evidence provides a substantial basis from which the Court can draw its jurisdictional conclusions. Akerblom has failed to demonstrate how additional discovery would help enhance the Court's analysis. *See 21st Century Financial Services, Inc. v. Mandelbaum*, No. A-10-CA-803 LY, 2011 WL 3844209, at *2 (W.D. Tex. Aug. 30, 2011) ("Plaintiff has failed to demonstrated how deposing Mandelbaum (or any of the other individuals) would provide Plaintiff with evidence that would support personal jurisdiction in this case."); *Mohamed v. Erinys Intern. Ltd.*, No. H-09-3362, 2010 WL 3359518, at *4 (S.D. Tex. Aug. 23, 2010) ("Even after the Court gave Plaintiffs an additional opportunity to respond to Erinys UK's motion to dismiss, Plaintiffs still have not specified *what* evidence they believe discovery would produce and *how* that evidence would support personal jurisdiction."); *Marine Geotechnics, LLC v. Williams*, No. H-07-3499, 2009 WL 2144358, at *5 (S.D. Tex. July 13, 2009) ("The story is fully told and does not indicate that further discovery would reveal a smoking jurisdictional gun."). The Court concludes that no jurisdictional discovery is warranted.

### 4.  Conclusion

Akerblom has not met his burden of making a *prima facie* showing that this Court has personal jurisdiction over EHL, Ezra Energy, or Emas Offshore. The Court therefore grants EHL's Motion.

### IV. CONCLUSION

For the reasons explained above, Emas Subsea's Motion (Doc. No. 5) and EHL's Motion (Doc. No. 3) are **GRANTED.** The Court concludes, however, that it requires

further briefing and affidavits from which to rule on Lee's Motion. Specifically, the Court orders additional briefing on the question of the adequacy of Singapore as an alternative forum, to be submitted by February 10th.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 25th day of January, 2012.

_____

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**