UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OVE WILLIAM AKERBLOM, | § § | |
| Plaintiff, | § § | Civil Action No. 4:11-cv-00694 |
| VS. | § § | |
| EZRA HOLDINGS LTD, *et al.*, | § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

Before the Court is Lee Chye Tek Lionel a/k/a Lionel Lee's Motion to Dismiss on the Basis of Forum Non Conveniens ("Motion"). (Doc. No. 4.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that the Motion should be **GRANTED.**

**I. BACKGROUND**

The Court reviewed the facts of this case in its January 25, 2012 Memorandum and Order. (Doc. No. 28.) The Court will recite those facts again here. In 2009, the offshore support and marine services company Ezra Holdings Limited ("EHL") approached Ove William Akerblom ("Akerblom" or "Plaintiff") with an oral offer to purchase Intrepid Global Pte. Ltd. ("IGPL"), a company in which Akerblom had a majority ownership. For several months, the managing director of EHL, Lee Chye Tek Lionel ("Lee"), and Akerblom discussed Akerblom's potential acquisition of IGPL. Akerblom was presented with a written offer to purchase IGPL in September 2009. He

rejected that offer, however, due to concerns with the transfer of EHL stock, his employment agreement, and the infusion of cash into IGPL.

Lee then approached Akerblom a second time, and made various representations about the potential purchase. For example, among other promises, Lee suggested that EHL would transfer 1,500,000 shares of EHL to Akerblom, which would vest over a four year period; Akerblom would be provided with a five year employment contract with EHL and the Emas Subsea division of Emas Offshore Limited ("EOL"); Akerblom would retain a ten percent ownership of IGPL; and the Emas Subsea division of EOL would be integrated with IGPL. In October 2009, Akerblom entered into both an agreement to transfer ninety percent of the outstanding shares of IGPL to EHL, and a service agreement under which Akerblom was to be appointed managing director IGPL and receive monthly payments of $35,000. According to Akerblom, he would not have entered into these agreements but for Lee's specific representations on behalf of EHL. Akerblom was told that Greg McCavanagh ("McCavanagh"), an associate director of Emas Subsea Services, LLC ("Emas Subsea"), would report directly to him. Akerblom also claims that, during a Business Process Operations Review meeting held with EHL, Emas Subsea created an organizational chart that confirmed that Akerblom "was in charge of Emas Subsea Globally" and "in charge of operations in West Africa."

From October 2009 to June 2010, Akerblom and IGPL employees provided significant support to EHL's various programs. Additionally, Akerblom presented Lee with various opportunities for IGPL, which Lee declined to take, resulting in a minimum loss of $400 million in revenue to IGPL. According to Akerblom, IGPL offered to assist EHL and Emas Marine Services ("EMS") in Nigeria, as IGPL had extensive operational

2

experience in that country. In response, EHL and EMS took employees from IGPL and placed them in the service of EMS, resulting in significant losses to IGPL, both financially and to its reputation. Akerblom also took steps, in early 2010, to develop business relationships in Ghana, one of the new frontiers in the oil and gas business. Nonetheless, Lee unilaterally determined that IGPL would not do business in Ghana, resulting in an astronomical loss of revenue to IGPL and Akerblom.

Akerblom believes that in March 2010, it became clear that EHL was attempting to "push Akerblom and IGPL out of their system." At this time, EHL established Emas Subsea Pte. Ltd. ("Emas Subsea Ltd.") and began shifting business from IGPL to Emas Subsea Ltd. At a meeting in May 2010, Lee at first indicated that Akerblom "would be in charge of the overall marine construction business," only to decide, on the second day of the meeting, that Akerblom would be in charge of operations only. When Akerblom refused to accept this change in his duties, Lee expressed dissatisfaction with Akerblom and falsely accused him of not delivering projects.

Over the next several months, various meetings were held in Houston, Texas concerning the potential of Akerblom to repurchase the shares of IGPL held by EHL. Lee presented Akerblom with an offer to buy back IGPL by returning the 1,500,000 shares of EHL stock to EHL and payment of $650,000 to EHL. Lee told him "his choice was to accept this deal or that Lee would see to it that Akerbom was ruined economically and forced into personal bankruptcy." Indeed, Lee soon thereafter notified Akerblom that IGPL was no longer a partner of EHL, resulting in the effective termination of the service agreement between Akerblom and IGPL. Akerblom also believes that Lee started a crusade to ruin another company in which Akerblom held an interest, Intrepid Offshore

3

Contractors ("IOC"), by instructing EHL personnel to force one of the owners of IOC to terminate a team of eleven people, including Akerblom. Akerblom claims that EHL and Lee also induced another EHL entity, Ezra Marine Services Pte. ("Ezra Marine"), to cancel and default on an existing contract with IOC. In November 2010, the Secretary and General Counsel of EHL notified Akerblom that he was to return the 1,500,000 shares of EHL and repay EHL $650,000, or EHL would pursue "other approaches to bring about a resolution of this matter."

Akerblom brought this lawsuit against EHL, Ezra Energy Services Pte. Ltd. ("Ezra Energy"), Emas Offshore Limited ("Emas Offshore"), Emas Subsea, and Lee (collectively, "Defendants") in state court, alleging breach of contract, common law fraud, statutory fraud, breach of fiduciary duty, intentional infliction of emotional distress, intentional interference with an existing contract, and civil conspiracy. The case was removed to this Court pursuant to 28 U.S.C. §§ 1332(a)(2), 1441, and 1446. Defendants then filed several Motions to Dismiss: Emas Subsea Services, LLC's Motion to Dismiss for Failure to State a Claim; Ezra Holdings Limited, Ezra Energy Services Pte. Ltd., and Emas Offshore Limited's Motion to Dismiss for Lack of Personal Jurisdiction and, Alternatively, on the Basis of Forum Non Conveniens; and Lee Chye Tek Lionel's Motion to Dismiss on the Basis of Forum Non Conveniens. After a hearing and the submission of supplemental briefing, the Court granted Emas Subsea Services, LLC's Motion to Dismiss and Ezra Holdings Limited, Ezra Energy Services Pte. Ltd., and Emas Offshore Limited's Motion to Dismiss. (Doc. No. 28.) The Court did not grant or deny Lee's Motion to Dismiss on the Basis of Forum Non Conveniens. Instead, in its

Memorandum and Order, to aid it in its forum non conveniens analysis, the Court requested additional briefing on the question of the adequacy of Singaporean law.

## II. ANALYSIS

Lee argues that the claims against him should be dismissed on the basis of forum non conveniens. When assessing whether to dismiss on forum non conveniens grounds, this Court must first determine whether there is an available and adequate alternative forum. Akerblom argues that there is no available and adequate alternative forum because: (1) Lee advised Akerblom that he would seek for Akerblom's visa to be canceled so that Akerblom could not attend proceedings in Singapore; (2) Singapore does not permit a jury trial; and (3) Singapore does not permit the use of depositions, meaning that witnesses from Texas would need to travel to Singapore to testify at trial. (Doc. No. 17, Resp. to Lee's Mot. 4.) "[T]he defendant seeking dismissal must establish that there is an alternate forum that is both available and adequate." *Perforaciones Exploracion Y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 Fed.Appx. 675, 679 (5th Cir. 2009). The Fifth Circuit has stated: "'A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'" *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (quoting *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir. 1987)).

Lee is a citizen of Singapore, owns a home in Singapore, and travels to Singapore regularly. (Doc. No. 4, Lee's Mot. 2.) Therefore, Lee could be served with process in

Singapore. Additionally, Lee has submitted a declaration to the Court stating that he voluntarily consents to the jurisdiction of Singaporean courts with respect to this action, waives any available jurisdictional defenses concerning that forum, and is willing to accept service of process in the United States or Singapore requiring his appearance in a Singaporean court. (Doc. No. 30-1, Ex. A. to Defendant Lee Chye Tek Lionel a/k/a Lionel Lee's Supplemental Briefing on Forum Non Conveniens, Declaration of Lee Chye Tek Lionel ¶ 3.) Lee has also appointed a firm of solicitors in Singapore to accept service of process on his behalf in Singapore. (*Id.*) "A foreign forum is available when the entire case and all the parties can come within that forum's jurisdiction." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007) (citations omitted). Lee's submission to the jurisdiction of Singaporean courts renders that forum available for the purpose of this Court's forum non conveniens analysis. *In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009) (quoting *Veba-Chemie A.G. v. M/V GETAFIX*, 711 F.2d 1243, 1245 & n.3 (5th Cir. 1983)).

The Court provided the parties with the opportunity to submit additional briefing on the adequacy of Singapore as an alternative forum. In his supplemental briefing, Akerblom merely repeated his argument that "Lee has made it clear that he will take whatever steps necessary to assure that Akerblom will not be able to attend any proceedings in Singapore." (Doc. No. 29, Plaintiff's Supplemental Response to Defendant, Lee Chye Tek Lionel a/k/a Lionel Lee's, Motion to Dismiss on the Basis of Forum Non Conveniens 2.) However, Lee explained in his declaration that he has "neither the ability nor the desire to impede any United States citizen's application for a travel visa to Singapore or application for Employment Pass, including any present or

Singapore. Additionally, Lee has submitted a declaration to the Court stating that he voluntarily consents to the jurisdiction of Singaporean courts with respect to this action, waives any available jurisdictional defenses concerning that forum, and is willing to accept service of process in the United States or Singapore requiring his appearance in a Singaporean court. (Doc. No. 30-1, Ex. A. to Defendant Lee Chye Tek Lionel a/k/a Lionel Lee's Supplemental Briefing on Forum Non Conveniens, Declaration of Lee Chye Tek Lionel ¶ 3.) Lee has also appointed a firm of solicitors in Singapore to accept service of process on his behalf in Singapore. (*Id.*) "A foreign forum is available when the entire case and all the parties can come within that forum's jurisdiction." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007) (citations omitted). Lee's submission to the jurisdiction of Singaporean courts renders that forum available for the purpose of this Court's forum non conveniens analysis. *In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009) (quoting *Veba-Chemie A.G. v. M/V GETAFIX*, 711 F.2d 1243, 1245 & n.3 (5th Cir. 1983)).

The Court provided the parties with the opportunity to submit additional briefing on the adequacy of Singapore as an alternative forum. In his supplemental briefing, Akerblom merely repeated his argument that "Lee has made it clear that he will take whatever steps necessary to assure that Akerblom will not be able to attend any proceedings in Singapore." (Doc. No. 29, Plaintiff's Supplemental Response to Defendant, Lee Chye Tek Lionel a/k/a Lionel Lee's, Motion to Dismiss on the Basis of Forum Non Conveniens 2.) However, Lee explained in his declaration that he has "neither the ability nor the desire to impede any United States citizen's application for a travel visa to Singapore or application for Employment Pass, including any present or

Singapore. Additionally, Lee has submitted a declaration to the Court stating that he voluntarily consents to the jurisdiction of Singaporean courts with respect to this action, waives any available jurisdictional defenses concerning that forum, and is willing to accept service of process in the United States or Singapore requiring his appearance in a Singaporean court. (Doc. No. 30-1, Ex. A. to Defendant Lee Chye Tek Lionel a/k/a Lionel Lee's Supplemental Briefing on Forum Non Conveniens, Declaration of Lee Chye Tek Lionel ¶ 3.) Lee has also appointed a firm of solicitors in Singapore to accept service of process on his behalf in Singapore. (*Id.*) "A foreign forum is available when the entire case and all the parties can come within that forum's jurisdiction." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007) (citations omitted). Lee's submission to the jurisdiction of Singaporean courts renders that forum available for the purpose of this Court's forum non conveniens analysis. *In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009) (quoting *Veba-Chemie A.G. v. M/V GETAFIX*, 711 F.2d 1243, 1245 & n.3 (5th Cir. 1983)).

The Court provided the parties with the opportunity to submit additional briefing on the adequacy of Singapore as an alternative forum. In his supplemental briefing, Akerblom merely repeated his argument that "Lee has made it clear that he will take whatever steps necessary to assure that Akerblom will not be able to attend any proceedings in Singapore." (Doc. No. 29, Plaintiff's Supplemental Response to Defendant, Lee Chye Tek Lionel a/k/a Lionel Lee's, Motion to Dismiss on the Basis of Forum Non Conveniens 2.) However, Lee explained in his declaration that he has "neither the ability nor the desire to impede any United States citizen's application for a travel visa to Singapore or application for Employment Pass, including any present or

future application of Mr. Ove William Akerblom." (Lee Decl. ¶ 5.) Furthermore, Akerblom need not apply for any travel visa for a visit of up to thirty days. (Doc. No. 30-2, Ex. B to Defendant Lee Chye Tek Lionel a/k/a Lionel Lee's Supplemental Briefing on Forum Non Conveniens, Declaration of Gan Seng Chee ¶ 9.) As Lee has presented evidence showing that Akerblom's concerns are unsubstantiated, the Court concludes that the forum is not inadequate as a result of Lee's alleged threats. Nor does the lack of jury trials or depositions render a forum inadequate. *Zermeno v. McDonnell Douglas Corp.*, 246 F.Supp.2d 646, 659 (S.D. Tex. 2003) ("Neither discovery limitations nor the lack of a jury trial in a foreign forum makes that forum inadequate." (citing *Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F.Supp. 829, 834 (S.D. Tex. 1993))). Indeed, adequacy does not "require that the alternative forum provide the same relief as an American court." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007). Furthermore, courts have held that Singapore is an adequate alternative forum. *Anwar v. Fairfield Greenwich Ltd.*, 742 F.Supp.2d 367, 377 (S.D.N.Y. 2010); *Van Schijndel v. Boeing Co.*, 434 F.Supp.2d 766, 774-75 (C.D. Cal. 2006); *In re Air Crash Disaster Near Palembang, Indonesia*, No. MDL 1276, 2000 WL 33593202, at *1 (W.D. Wash. Jan. 14, 2000); *Simcox v. McDermott Intern., Inc.*, 152 F.R.D. 689, 700 (S.D. Tex. 1994); *Chick Kam Choo v. Exxon Corp.*, 699 F.2d 693, 697 (5th Cir. 1983).

Additionally, Lee offers support suggesting that Singapore is an adequate alternative forum in the form of a declaration from Gan Seng Chee, an advocate and solicitor of the Supreme Court of Singapore. According to Chee, Singapore is an adequate alternative forum because:

- A typical case can be expected to be heard at trial within twelve to eighteen months.

- Singaporean law recognizes causes of action for a wide variety of claims, including the types of claims at issue in this case.

- Singaporean courts commonly make orders to compel the production of documents when they deem that such production is necessary for fairly disposing of the cause or matter.

- Witnesses in Singapore, when subpoenaed to give evidence, will be mandated by law to give evidence.

- Foreign litigants are afforded every opportunity that would be available to a domestic party.

(Chee Decl. ¶¶ 2-8.) "[T]he adequacy of a foreign forum's substantive laws is presumed, absent any showing to the contrary," and Akerblom has made no showing that Singapore's laws are inadequate. *Adams v. Merck & Co., Inc.*, 353 Fed.Appx. 960, 962 (5th Cir. 2009). Furthermore, Lee has provided support for his proposition that Singaporean law is adequate. The Court concludes that Singapore is an available, adequate alternative forum.

Second, the Court must consider the private interest factors to determine whether they weigh in favor of dismissing Akerblom's claims against Lee. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the possibility of viewing the premises, if viewing would be appropriate to the action; and (4) all other practical problems that make trial of a case

8

easy, expeditious, and inexpensive, including enforceability of a judgment and whether the plaintiff has sought to vex, harass, or oppress the defendant. *DTEX, LLC*, 508 F.3d at 794. The private interest factors, the Court concludes, are neutral. On the one hand, the majority of the evidence will be located in Singapore, and many witnesses may be present in Singapore, as Lee's actions were on behalf of Singapore-based companies. On the other hand, Akerblom's witnesses are located in Texas, and it would be expensive to require them to relocate to Singapore for trial.

Third, the Court must consider the public interest factors. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 794 (citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999); *In re Air Crash*, 821 F.2d at 1162-63). This case would represent a burden to the Court's docket; it is unreasonable to impose on United States juries the requirement of applying Singaporean law; and there is little local interest in resolving a controversy about Singaporean contracts with Singaporean companies governed by Singaporean choice-of-law clauses. The Court is aware that "[o]rdinarily a strong favorable presumption is applied to the plaintiff's choice of forum." *Id.* at 795. Nonetheless, the Court believes that this is a situation in which "the balance is strongly in favor of the defendant," and therefore Akerblom's choice of forum must be disturbed. *Id.* Indeed, "'[i]n an era of increasing international commerce, parties who choose to engage

9

in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.'" *Id.* (quoting *Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990)). Based on these factors, the Court concludes that Akerblom's claims against Lee must be dismissed on the grounds of forum non conveniens.

### III. CONCLUSION

For the reasons explained above, Lee's Motion is **GRANTED.** The Court dismisses Akerblom's claims against Lee with prejudice. This Court may reassert jurisdiction upon timely notification if Akerblom is unable to seek remedies in Singaporean courts because he has been precluded from reentering that country. The Court may also reassert jurisdiction upon timely notification if Lee does not consent to the jurisdiction of Singaporean courts with respect to this action, asserts jurisdictional defenses concerning that forum, or refuses to accept service of process in the United States or Singapore requiring his appearance in a Singaporean court. The Court retains jurisdiction to supervise the terms of this dismissal.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 13th day of February, 2012.

**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**